UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ANGELO RODRIGUEZ, on behalf of himself, | § | |
| and all Others Similarly Situated Employees, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| V. | § | CASE NO.: 1:24-CV-752 |
| | § | |
| KASEYA HOLDINGS, INC., | § | ADEA, OWBPA, and WARN Act |
| KASEYA INC., and | § | COMPLAINT and WARN Act CLASS |
| DATTO HOLDING CORP., | § | ACTION COMPLAINT |
| | § | |
| *Defendants.* | § | |

---

## PLAINTIFF'S ORGINAL COMPLAINT AND WARN ACT CLASS ACTION COMPLAINT

---

TO THE HONORABLE JUDGE OF SAID COURT:

Now Comes, Angelo Rodriguez, Plaintiff, on behalf of himself and all Others Similarly Situated Employees complaining of Kaseya Holdings, Inc., Kaseya, Inc., Kaseya US L.L.C., Datto Holdings Corp, and Datto, Inc. ("Datto")(collectively "Kaseya" or "Defendants"), and for causes of action respectfully shows this court the following:

### I.    DISCOVERY

1.    Plaintiff Angelo Rodriguez affirmatively pleads that discovery should be conducted in accordance with Federal Rules of Civil Procedure Rule 26.

### II.    PARTIES

2.    Plaintiff Rodriguez is an individual who resided in Williamson County, Texas at all times material and relevant to all causes of action asserted herein.

3.      Defendant Kaseya Holdings, Inc. is a Delaware corporation and parent company of Kaseya, Inc. formerly known as Kaseya US Sales, L.L.C. with its principal office located at 701 Brickell Ave. Suite 400 Miami, FL 33131 conducting business in the State of Texas and may be served through its Texas registered agent Corporation Service Company at 211 E. 7th St. Suite 620 Austin, TX 78701-3218.

4.      Datto Holding Corporation is a Delaware corporation with its principal office located at 101 Merritt 7, 7th Floor Norwalk, CT 06851 is conducting business in the State of Texas but does not maintain a regular place of business in Texas and does not have a designated agent for service of process. This suit arises from Datto's business in the State of Texas. Datto, Inc. d/b/a Datto Backup is a subsidiary of Datto Holding Corp. which is a wholly owned subsidiary of Kaseya, Inc. and may be served through its registered agent The Corporation Trust Company at Corporation Trust Center Orange St. Wilmington, DE 19801 or through the Texas Secretary of State pursuant to TEX. CIV. P. REM. CODE §17.044.

### III.      <u>JURISDICTION AND VENUE</u>

5.      This court has jurisdiction over this matter pursuant to 28 U.S.C. §§1331 and 1343, the Age Discrimination in Employment Act of 1967 ("ADEA") 29 U.S.C. §621 *et. seq.*, the Older Workers Benefit Protection Act of 1990 ("OWBPA"), and the Worker Adjustment and Retraining Notification Act ("WARN") 29 U.S.C. §2101 *et. seq*.

6.      This court also has supplemental jurisdiction over Plaintiff's state age discrimination claims pursuant to the Texas Labor Code Chapter 21 & 28 U.S.C. §1367. This court also has personal jurisdiction over the corporate and entity defendants as they have availed themselves to protections of the State of Texas through regularly conducting business in the State of Texas.

7.      Venue is proper in this district pursuant to §1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this District and pursuant to 29 U.S.C. §2104(a)(5) in this District in which the employer transacts business.

## IV.    EXHAUSTION OF ADMINISTRATIVE REQUIREMENTS

8.      On April 2, 2024, Kaseya terminated Angelo Rodriguez. On May 2, 2024, within 300 days of Plaintiff's termination, Plaintiff filed his Charge of Discrimination with the U.S. Equal Employment Opportunity Commission alleging age discrimination violations against his former employer Kaseya et. al. Pursuant to the ADEA, Plaintiff is permitted to bring this suit without the EEOC issuing a Notice of Right to Sue Letter.

## V.    FACTUAL HISTORY

9.      Plaintiff Angelo Rodriguez's date of birth is ███████ and as of April 2, 2024 was 57 years of age.

10.     In 2019, Austin, Texas based company Infocyte, a cyber security company, hired Mr. Rodriguez as Director Pre-Sales Engineering and Alliances. Mr. Rodriguez worked remotely from his office located in Williamson County, Texas.

11.     On January 20, 2022, Datto Holding Inc. acquired Infocyte where Mr. Rodriguez served as a Principal Solutions Engineer wherein he continued to work remotely from his office located in Williamson County, Texas.

12.     On April 11, 2022, Kesaya Holdings Inc. purchased Datto for 6.2 billion dollars.

13.     Kaseya is a comprehensive integrated IT management company providing IT solutions to companies worldwide.

14.     From January 2022 until his termination on April 2, 2024, Defendants employed Plaintiff Rodriguez as a Principal Solutions Engineer who worked remotely in Williamson County, Texas through its Miami headquarters.

15.     In February 2023, Miami Dade County granted Kaseya a 4.5 million dollar based incentive subsidy based upon Kaseya's representation in its application that it intended to hire an additional 3,400 employees over the next couple of years.

16.     Kaseya contended that the newly added jobs would more than quadruple Kaseya's Miami area current workforce. When Kaseya submitted its application for the Miami Dade incentives, according to the company it had 820 local employees.

17.     In late 2023, Kaseya brought its total number of Miami based employees to somewhere between 900 and 1,000.

18.     In April 2023, after FTX cryptocurrency exchange lost the naming rights when FTX CEO Sam Bankman-Fried was indicted on federal charges and FTX declared bankruptcy, Kaseya acquired the naming rights to the home arena of the National Basketball Association Miami Heat for $117 million dollars over a 17-year period.

19.     Plaintiff Rodriguez consistently overachieved his Kaseya set performance goals. In 2022, Plaintiff Rodriguez exceeded his target earnings by 25%, and in 2023 exceeded his target earnings by 27%. In both 2022 and 2023, Kaseya rewarded Plaintiff Rodriguez's outstanding performance by granting him additional Kaseya stock shares.

20.     Plaintiff Rodriguez was the Principal Solutions Engineer supporting a five person sales team that in 2023, individually, ranked fifth highest in Annual Recurring Revenue (ARR) out of company-wide ~65 team members. Mr. Rodriguez also ranked number 1 out of the ~65 team

members in Average Selling Price (ASP) and received an Exceptional Performance award for the largest deal amongst his team.

21.    In January 2024, Kaseya provided Plaintiff Rodriguez his 2023-Year End Performance Review (Exhibit "1"). Kaseya evaluated Plaintiff Rodriguez's sales executive performance with statements of employee performance measured against goals/KPIS, and rated him on three performance metrics utilizing a numerical four-tier scale assessed against Kaseya company standards:

- Exceptional Performance (4)-Consistently exceeds role expectations and targets, delivers outstanding results and demonstrates the skill and capability to take on additional responsibilities. A role model employee in performance and exemplifying the business and interpersonal competencies.

- Solid Performance (3)-Consistently meets and may exceed role expectations at times with a solid track record of success. Achieves the core goals for the role, demonstrates the business and interpersonal competencies, and exhibits the capability for continued growth.

- Developing Performance (2)-Performance needs improvement to consistently meet expectations of the position. May demonstrate the business and interpersonal competencies sometimes or all the time, but key takeaway is that additional development is needed. Employee requires some improvement in overall performance and competency levels. Can be coached to improve.

- Under Performance (1)-The employee regularly of consistently falls short of expectations, misses deadlines or targets. Requires immediate and focused action to address performance deficiencies, regardless of interpersonal competency demonstration.

22.    Kaseya rated Plaintiff Rodriguez on three separate performance metrics. On two of the three metrics, "Rating on Business Competencies and Rating on Interpersonal Competencies", Kaseya rated him as exceptional, On the other metric, "Rating on Performance against Goals", Kaseya rated him as solid,  for an overall rating of 4 = "Exceptional Performance."

23.     Furthermore, Kaseya's stated in its Performance Review regarding Plaintiff Rodriguez's 2023 overall exceptional performance:

> "part of the NAM  Network Security Team that helped contribute to 51.6 million for 2023, 5th highest ARR SE achiever, 1st highest ASP across the SE team…Demonstrates a high level of domain, functional and/or technical capability resulting in the ability to produce high quality work output… Joining Datto from the Infocyte acquisition, Angelo is the most experienced Security SE on the team and a principle on the EDR product. This includes working closely with: SE, AM, Specialist, Manager, Product, Marketing, and Executive, teams… Leverages intellectual curiosity and a strong work ethic to drive results. Consistently follows through. Remains composed and productive under pressure/stress. Persists through challenges and failures. Shows resilience and grit while maintaining focus…Angelo worked very closely with the Specialist team on positioning the EDR product, selling on value and integrations, even to the point of being included on the Specialist team meetings. Angelo was the point of contact for all technical questions and any issues that came up during evaluation. The EDR team in 2023 brought in $10.4 million dollars in opportunities."

24.     In the additional 2023 Performance Review manager notes section, Kaseya stated, "[A]s a part-time employee (I think the only part-time employee [2 days per week]), Angelo has consistently provided top notch demonstration and product expertise. Angelo is also the only CISSP [CISSP is a master level cybersecurity certification, the highest certification one can obtain. Mr. Rodriguez has held this certification since 2013] in the organization, which often leads to immediate acceptance by prospects and customers as expert testimony."

25.     In February 2024, less than 60 days before his clearly pre-textual "poor performance" termination, Kaseya recognized Plaintiff Rodriguez, again, for his exceptional leadership sales accomplishments and presented him with the Kaseya "Exceptional Performance Winner SKO 2024" award, in part, for securing the largest sales deal for calendar year 2023. (Exhibit "2").

26.     On April 2, 2024, part of its Miami headquarters Mass Terminations, Kaseya terminated all four individuals within Plaintiff Rodriguez's team, Robert Walker, Steve Nalick,

Steve Warren, and Andrew Haynes. Including Plaintiff Rodriguez, Mr. Walker, Mr. Nalick, and Mr. Warren are all within the ADEA protected class. The fourth person, Mr. Haynes suffered from a medical condition that Kaseya contended interfered with him from performing some job duties. Kaseya replaced Plaintiff Rodriguez with, Michelle Conlon, an individual outside the protected class.

27.    Kaseya claimed both privately to its terminated employees and publicly to various news organizations that its Mass Terminations were due to "poor performance."

28.    Kaseya through its Chief Communications Officer Xavier Gonzalez reaffirmed Kaseya's pre-textual "poor performance" rational for the Mass Terminations in a company statement and multiple interviews with news outlets, "[W]e had performance-based terminations, and all those roles will be backfilled. They were not layoffs but rather part of a general business practice that the company uses to regularly review employees' performance." (Exhibit "3").

29.    Defendants terminated a group of employees, including Plaintiff Rodriguez, who are protected under the ADEA, OWBPA, and WARN Acts and requested all of them to sign a Separation Agreement and Release of all claims ("Release")(Exhibit "4").

30.    The Release, *inter alia*, requested all terminated employee to waive and give up all employment based claims and included non-solicitation and non-compete prohibiting the signatory from serving as an employee, officer, director, contractor, or consultant for 12 months with any business that is a direct competitor with Kaseya, and a confidentiality clause...in exchange for **$250**. The $250 proposed contractual consideration represents less than one-hour work compensation based upon Plaintiff Rodriguez's 2023 yearly and first quarter 2024 salaries, not including his stock vesting options.

31.     Defendants employed Plaintiff Rodriguez and Others Similarly Situated Employees at or through its Miami headquarters until their collective Mass Termination on April 2, 2024.

32.     Upon information and belief, on April 2, 2024, Defendants Mass Terminated over ~300 persons of its approximately 900 employee workforce from its Miami headquarters location representing over 1/3 of its Miami based workforce, and more than 50 employees, excluding part-time employees.

33.     At all times material, Defendants were employers engaged in an industry affecting commerce who each singularly and/or collectively employed twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. 29 U.S.C. §630.

34.     Pursuant to the WARN Act requirements, on April 2, 2024, Kaseya was an employer that employed 100 or more employees, excluding part time employees, or 100 or more employees who worked in the aggregate over 4000 hours per week.

35.     Kaseya failed to provide the 60 day statutory WARN Act Notice, to any of its ~300 Mass Termination employees that it was conducting a Mass Termination and it failed to provide the same notice to the State and the chief elected official of Miami Dade County.

36.     In 1990, the OWBPA amended the ADEA, pursuant to Section 201 requires employers who terminate 2 or more employees within the protected class that are subjected to the same decision-making process, here Mass Termination, employers are required to include with any waiver and exit incentive, "the decisional unit considered for termination, eligibility factors and selection criteria utilized to select employees for termination, ages and job titles of all employees considered for termination, ages of those terminated and retained employees, and an increase the Release consideration period from 21 to 45 days."

37.    Kaseya failed to provide to provide with its Release the decisional unit considered for termination, eligibility factors and selection criteria utilized to select employees for termination, ages and job titles of all employees considered for termination, ages of those terminated and retained employees, and an increase the Release consideration period from 21 to 45 days.

## VI.    CAUSES OF ACTION

## COUNT 1-ADEA DISCRIMINATION

38.    Plaintiff Rodriguez re-alleges each and every allegation set forth in paragraphs 1-37.

39.    Pursuant to the ADEA, Plaintiff Rodriguez satisfied all jurisdictional and administrative prerequisites to bring and maintain this cause of action based upon age discrimination.

40.    An employer commits an unlawful employment practice if because of age the employer discharges an individual. 29 U.S.C. §630(b).

41.    At the time Kaseya terminated Plaintiff Rodriguez, he was a member of the protected class, an individual 40 years of age or older. 29 U.S.C. §631(a).

42.    Pursuant to the ADEA, Defendants, singularly, or collectively as a single employer, are employers engaged in an industry affecting commerce who each singularly and collectively employed twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. 29 U.S.C. §630(b).

43.    Defendants terminated Plaintiff solely because of his age. Defendants' proffered legitimate reason of "poor performance" was merely pre-textual, and but for Plaintiff Rodriguez's age he would not have been terminated.

44.    Defendants' conducted Plaintiff Rodriguez's discriminatory termination with malice or reckless indifference to his federal rights.

## COUNT 2- OWBPA

45.     Plaintiff Rodriguez re-alleges each and every allegation set forth in paragraphs 1-44.

46.     Defendants terminated Plaintiff Rodriguez and three other team members in violation of the OWBPA, as all four were within the protected class 40 years of age or older.

47.     On April 2, 2024, Defendants, at a minimum, admitted it terminated at least 150 persons in a Mass Termination with at least four persons within the protected class. On information and belief, Defendants' Mass Termination included over ~300 persons.

48.     Defendants terminated two or more employees within the protected class that were subjected to the same decision-making process Mass termination based upon "poor performance."

49.     Pursuant to the OWBPA Section 201, since Defendants terminated two or more persons within the protected class and requested a waiver with an exit incentive, Defendants' Release was required to include: "the decisional unit considered for termination, eligibility factors and selection criteria utilized to select employees for termination, ages and job titles of all employees considered for termination, ages of those terminated and retained employees, and an increase the Release consideration period from 21 to 45 days."

50.     Defendants' Release failed to include "the decisional unit considered for termination, eligibility factors and selection criteria utilized to select employees for termination, ages and job titles of all employees considered for termination, ages of those terminated and retained employees, and failed to extend the ADEA's consideration period from 21 days to 45 days."

51.     Defendants' Release on its face violated all OWBPA's Section 201 waiver and exit incentive notice requirements.

## COUNT-3-TEXAS LABOR CODE CHAPTER 21

52.     Plaintiff Rodriguez re-alleges each and every allegation set forth in paragraphs 1-51.

53.     Pursuant to the Texas Labor Code, Plaintiff Rodriguez satisfied all jurisdictional and administrative prerequisites to bring and maintain this cause of action based upon age discrimination.

54.     An employer commits an unlawful employment practice if because of age the employer discharges an individual. TEX. LABOR CODE §21.051.

55.     Defendants, singularly, or collectively and a single employer, are a covered employer as defined by the Texas Labor Code as businesses who are engaged in an industry affecting commerce and who had 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.  TEX. LABOR CODE §21.002(8)(A).

56.     At the time Kaseya terminated Plaintiff Rodriguez, he was a member of the protected class, an individual 40 years of age or older. TEX. LABOR CODE §21.101.

57.      Defendants terminated Plaintiff solely because of his age. Defendants' proffered reason of "poor performance" was merely pre-textual for discrimination, or while partially true, was only one reason for their conduct, and age discrimination was a motivating factor.

58.     Defendants' conducted Plaintiff Rodriguez's discriminatory termination with malice or reckless indifference to his state rights. TEX. LABOR CODE §21.2585(2).

## CLASS ACTION ALLEGATIONS- WARN Act 29 U.S.C. §2104(a)(5)

59.     Plaintiff Rodriguez re-alleges each and every allegation set forth in paragraphs 1-58.

60.     Pursuant to the WARN Act 29 U.S.C. §2014(a)(5), Plaintiff Rodriguez maintains this action on behalf of himself and on behalf of each of Other Similarly Situated Employees:

> All employees of Kaseya at the Miami headquarters who were terminated pursuant to a Mass Termination/Layoff (as those terms are defined in the WARN Act) within 90 days of April 2, 2024.

61.     Each of Other Similarly Situated Employees is similarly situated to Plaintiff Rodriguez in respect to their rights under the WARN Act.

62.     Defendants, singularly, or collectively as a single employer, were required by the WARN Act to give affected employees, Plaintiff Rodriguez and Other Similarly Situated Employees, at least 60-days advance written notice prior to their terminations.

63.     Prior to their terminations, neither Plaintiff Rodriguez and Other Similarly Situated Employees were paid their respective wages, salary, commissions, bonuses, accrued holiday and vacation pay for 60 days following the April 2, 2024 Mass Termination and failed to make 401(k) contributions and provide them with health insurance coverage, stock options, and other employee benefits.

## CLASS ACTION ALLEGATIONS-Fed. R. Civ. P.23(a) & (b)(3)

64.     Plaintiff Rodriguez re-alleges each and every allegation set forth in paragraphs 1-63.

65.     Plaintiff Rodriguez brings this action on his own behalf, and pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), on behalf of Other Similarly Situated Employees who worked at Kaseya Miami headquarters and were terminated, as part of, or as the reasonably foreseeable Mass Termination ordered and conducted by Defendants, singularly, or collectively as a single employer, on or about April 2, 2024, hereinafter (the "Class").

66.     The persons in the Class identified above ("Class Members") are so numerous that joinder of all Class Members is impracticable.

67.     The questions of law and fact common to Class Members predominate over any questions affecting only individual members.

68.     The claims of the representative party Plaintiff Rodriguez are typical of the claims of the Class.

69.     The representative party Plaintiff Rodriguez will fairly and adequately protect the interests of the Class.

70.     Representative party Plaintiff Rodriguez retained counsel competent and experienced in complex class action employment litigation.

71.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy—particularly in the contest of WARN Act litigation, where individual Plaintiffs and Class Members may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

72.     There are questions of law and fact common to Class Members that predominate over any questions solely affecting individual members of the Class, including but not limited to:

(a)   Whether Defendants are employers that employed 100 or more employees, excluding part-time employees, or 100 or more employees who worked in the aggregate over 4000 hours per week;

(b)   Whether Class Members were employees of Defendants, singularly, or collectively as a single employer, who worked at or reported to the Miami headquarters;

(c)   Whether Defendants Mass Terminated employees representing over 1/3 of its Miami based workforce, and at least 50 employees, excluding part-time employees;

(d) Whether Defendants, singularly, or collectively as a single employer, terminated the employment of Class Members without cause on their part and without giving them 60 days advance written notice;

(e) Whether Defendants, singularly, or collectively as a single employer may rely on the WARN Acts "unforeseeable business circumstances" defense;

(f) Whether Defendants, singularly, or collectively as a single employer failure to provide 60 days' notice should render them liable to Class Members for 60 days' pay and benefits;

(g) Whether Defendants, if applicable, constituted a "single employer" as defined by the WARN Act;

(h) Plaintiff Rodriguez is not presently or potentially in conflict with any potential member of the Class;

(i) The claims of the Class will not require subclasses presently or in the future;

(j) Counsel for Plaintiff has previously litigation numerous federal cases including collective action matters, is not now representing a class in any other class action, and has no other pending actions against named Defendants;

(k) Counsel for Plaintiff Rodriguez has discussed and thoroughly explained to Plaintiff the nature of a class action and potential advantages and disadvantages to Plaintiff by proceeding in a class action rather than individually;

(l) Statement of proposed notices:

Notice to the Class may be made by United States mail, electronic means, or other appropriate means. Kaseya will have data regarding contact information for each Class Member. (Proposed Notice attached hereto as Exhibit "5");

(m) No settlement discussion have taken place and Defendants submitted no response to Plaintiff's EEOC charge. Counsel has no knowledge of any person who has relied on the fact this suit has initially been filed as a class action;

(n) In the event this matter is resolved through settlement with Plaintiff Rodriguez the Class will be protected;

(o) The speedy resolution of this matter will be determinative upon Defendants authentication of the number of employees terminated and the accuracy of its Miami based employees on April 2, 2024;

## COUNT-4 WARN ACT 29 U.S.C. §2101 *et. seq.*

73.    At all relevant times, Defendants, singularly, or collectively as a single employer, employed 100 or more employees, exclusive of part-time employees, or employed 100 or more employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States as defined by the WARN Act. 29 U.S.C. §2101(a)(1) & (B).

74.    Defendants constituted a "single employer" of Plaintiff Rodriguez and Class Members in that, among other things:

(a) On April 11, 2022, Kaseya Holdings Inc. purchased Datto and entered into a Merger Agreement. (Exhibit "6" Security and Exchange Merger Agreement);

(b) Kaseya Holdings, Inc. and Kaseya Inc. merged with Datto Holding Corp. with Datto surviving as a wholly owned subsidiary of Kaseya, Holdings;

(c) Kaseya and Datto share all common officers and directors. Specifically, Fred Voccola is CEO of Kaseya and Datto;

(e) Upon information and belief, at all relevant times, Datto was dependent on Kaseya for its daily operating funds which were provided either directly by Kaseya or through financing arranged by Kaseya;

(f) Upon information and belief, at all relevant times, all of the Kaseya and Datto maintained common personnel policies that Kaseya put into place including payment of wages, a common health care plan, and benefit plans all of which was carried out by Kaseya;

(g) Upon information and belief, at all relevant times, all management-level personnel decisions relating to Kaseya and Datto were made by Kaseya;

(h) Upon information and belief, the decision to order a Mass Termination without providing a WARN notice was made by Kaseya on behalf of Kaseya and Datto;

(i) Upon information and belief, at all relevant times, Kaseya maintains sole control over all critical business decisions made on behalf of Defendants including decisions relating to Plaintiff Rodriguez's and the Class's employment and, specifically, the decision to Mass Terminate employees at its Miami headquarters without providing WARN notice;

(j) Upon information and belief, the decision to Mass Terminate without providing proper WARN notice was made by Kaseya on behalf of Defendants, singularly, or collectively as a single employer.

75.     On or about April 2, 2024 Defendants, singularly, or collectively as a single employer, ordered a Mass Termination  as those terms are defined by 29 U.S.C. § 2101(a).

76.     Plaintiff Rodriguez and Class Members who were terminated by Defendants as a result of Defendants ordering a Mass Termination at the Miami headquarters on or about April 2, 2024, and thereafter were "affected employees" as defined by 29 U.S.C. §2101(a)(5) of the WARN Act.

77.     The Mass Termination at the Miami headquarters resulted in "employment losses," as that term is defined by the WARN Act for at least fifty (50) of Defendants' employees as well as 33% of Defendant's workforce at the Miami headquarters, excluding "part-time employees," as that term is defined by the WARN Act.

78.     Plaintiff and each Class Member are "aggrieved employees" of Defendants as that term is defined in 29 U.S.C. § 2104 (a)(7).

79.     Pursuant to Sections 2102 of WARN and 20 C.F.R. §639.1-§639.10 *et. seq.*, Defendants were required to provide at least 60 days prior written notice of the termination or notice as soon as practicable, to the affected employees, explaining why the sixty (60) day prior notice was not given.

80.     Defendants failed to pay Plaintiff and each of Class Members their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for 60 working days following their respective terminations, and failed to make the pension and 401(k) contributions, provide other employee benefits under ERISA, and pay their medical expenses for 60 calendar days from and after the dates of their Mass Terminations.

81.     As a result of Defendants' failure to pay the wages, benefits and other monies as asserted above, the Aggrieved Employees were damaged in an amount equal to the sum of Plaintiff

Rodriguez's and Class Members' unpaid wages, accrued holiday pay, accrued vacation pay, accrued sick leave pay and benefits which would have been paid for a period of sixty (60) calendar days after the date of the members' terminations.

## VII.    DAMAGES

82.    Pursuant to TEX. LABOR CODE §§21.2585 & 21.259, 29 U.S.C. §626, 29 U.S.C. §21.01, Plaintiff Rodriguez and Others Similarly Situated Employees are entitled to recover the following damages from Defendants jointly and severely:

    a.   Back Pay;

    b.   Interest on Back Pay;

    c.   Front Pay;

    d.   Compensatory Damages to include emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

    e.   Lost Stocks and Stock Options;

    f.   Lost Benefits;

    g.   Punitive Damages

    h.   Attorney's Fees, Costs, and Expert Fees;

    i.   An amount equal to the sum of: unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay pension and 401(k) contributions and other ERISA benefits, for sixty (60) working days following the member employee's termination, that would have been covered and paid under the then applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Act; and

    j.   Interest as allowed by law on the amounts owed under the preceding paragraphs

## VIII.    JURY DEMAND

83.    On behalf of himself and Others Similarly Situated Employees, Plaintiff Rodriguez demands a trial by jury in this matter.

## IX.     <u>PRAYER</u>

**WHEREFORE**, Plaintiff and Class Members demand judgment against Defendants jointly and severally, as follows:

    a.  Back Pay;

    b.  Interest on Back Pay;

    c.  Front Pay;

    d.  Compensatory Damages to include emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

    e.  Lost Benefits;

    f.  Lost Stocks and Stock Options;

    g.  Punitive Damages;

    h.  Attorney's Fees, Costs, and Expert Fees;

    i.  An amount equal to the sum of: unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay pension and 401(k) contributions and other ERISA benefits, for sixty (60) working days following the member employee's termination, that would have been covered and paid under the then applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Act;

    j.  Certification that, pursuant to Fed. R. Civ. P. 23 (a) and (b) and the WARN Act, 29 U.S.C §2104(a)(5), Plaintiff and Class Members constitute a single class;

    k.  Interest as allowed by law on the amounts owed under the preceding paragraphs;

    l.  Appointment of the undersigned attorneys as Class Counsel;

    m.  Appointment of Plaintiff as Class Representative and payment of reasonable compensation for his services as such; and

    n.  Such other and further relief as this Court may deem just and proper.

Respectfully submitted,


THE LAW OFFICES OF JOHN W. ESCOVER, L.L.L.P.


By: _____
**John W. Escover**
State Bar Nº 24029539
4500 Williams Drive; Suite 212 #198
Georgetown, Texas 78633
Telephone: 512 635-7469
Facsimile: 866 372-4190
E-Mail: John@Escoverlaw.com
**ATTORNEY FOR PLAINTIFF AND
PROPOSED CLASS**